## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ARDRA YOUNG #260575,**

       **Plaintiff,**            **CIVIL ACTION NO. 12-CV-12751**

       **vs.**               **DISTRICT JUDGE ARTHUR J. TARNOW**

                                **MAGISTRATE JUDGE MONA K. MAJZOUB**

**LATOYA JACKSON, et al.,**

       **Defendants.**

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL [47] AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL [59] AND [62]

Plaintiff Ardra Young, currently a prisoner at the Carson City Correctional Facility in Carson City, Michigan, has filed this action under 42 U.S.C. § 1983, against Defendants Jackson, Jayawardena, Prison Health Services (presently known as Corizon Health, Inc.), and the Michigan Department of Corrections[1] alleging deliberate indifference to his medical needs in violation of the Eighth Amendment of the United States Constitution. (Docket no. 1.)

Before the Court are Plaintiff's various Motions to Compel.[2] (Docket nos. 47, 59, and 62.)

---

[1]Defendants Jackson, Jayawardena, and the MDOC have been dismissed.

[2]Docket no. 59 is entitled "Plaintiff's Reply to Response of Defendant . . . to Plaintiff's Requests for Interrogatories . . . ." And although he states in his next Motion (docket no. 62), that docket no. 59 "is a Reply to Defendant's Response and not a motion to compel," he argues in opposition of Defendant's objections with regard to several interrogatories. Nevertheless, regardless of Plaintiff's intent, his "Response" (docket no. 59) and his "Motion" (docket no. 62) seek the same information. And Defendant noted that it would address Plaintiff's Response as a Motion to Compel "in an abundance of caution." (Docket no. 60.) Thus, the Court will consider Plaintiff's filings together as a Motion to Compel.

1

Defendant Filed Responses (docket nos. 48, 60, and 63), and Plaintiff filed Replies (docket nos. 50 and 68). All pretrial matters have been referred to the undersigned for consideration. (Docket no. 18; *see also* docket nos 73 and 75.) The parties have fully briefed the motions; the Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

I.     **Background**

     A.     **Factual Background**

     Plaintiff's claim arises out of a knee injury sustained on March 22, 2012. (Docket no. 1 at 8.) Plaintiff claims that he fell on a broken section of pavement and that Defendants Jackson and Jayawardena attended to him following his fall. (*Id.*) Plaintiff alleges that his knee hurt him continuously and that "his knee locks up without warning." (*Id.*) Plaintiff further alleges that on May 25, 2012, his knee locked up and caused him to fall down a flight of stairs; following this fall, he was again treated by Jackson and Jayawardena. (*Id.*)

     After treating Plaintiff for just over a month, Jackson ordered an MRI of Plaintiff's knee, and after receiving the results, she requested that Plaintiff be permitted to follow up with an orthopedics specialist. (*See* docket no. 55-2 at 9-10, 17.) Corizon denied her request and told her to continue conservative treatment and resubmit her request if Plaintiff's knee was "locking." (*Id.* at 21-22.) On July 10, 2012, Jayawardena saw Plaintiff to discuss the results of his MRI, and she resubmitted a request to have Plaintiff's case reviewed by an orthopedic specialist. (*Id.* at 25-26.) Corizon also denied her request. (*Id.* at 30.)

     Plaintiff's conservative treatment continued without success, and on December 19, 2012, Plaintiff met with an orthopedic specialist. (*See* docket no. 58 at 17-21.) The specialist opined that

Plaintiff required a medial meniscectomy, and he requested "approval to schedule [right] knee arthroscopic surgery" because he "d[id] not feel [Plaintiff] c[ould] improve without the procedure." (*Id.* at 21.)  Corizon denied this request, and on June 3, 2013, Plaintiff sent a letter to Corizon indicating that his pain had gotten progressively worse in the 15 months since his injury. (*Id.* at 44-45.)

### B.    Procedural Background

Plaintiff brought his instant Motions against Defendants Jackson, Jawardena, and Corizon in August and October of 2013, alleging that they had failed to properly respond to various requests for production of documents and interrogatories. (*See* docket nos. 47, 59, and 62.)  On November 13, 2013, the undersigned recommended granting Defendants' Motion for Summary Judgment and dismissing this matter in its entirety, thus finding Plaintiff's Motions moot. (Docket no. 65.)  The Court adopted the undersigned's Report and Recommendation in part and dismissed Plaintiff's claims against Jackson and Jawardena, leaving only Plaintiff's claims against Corizon. (Docket no. 73.)  The Court further noted that Corizon's Motion for Summary Judgment was denied because "resolution [of Plaintiff's discovery motions] may bolster Plaintiff's claim against Corizon." (*Id.* at 8.)  Thus, the Court need only address Plaintiff's Motions as they relate to Corizon.

## II.    Discovery Standard

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998).  Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence

3

to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). If the receiving party fails to respond to interrogatories or RFPs, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(A)(5)(a).

**III.   Analysis**

Plaintiff's instant Motions center around his Request for Production of Documents Nos. 13, 14, 15, and 16, and his Interrogatory Nos. 3, 4, and 5. (Docket no. 47 at 2-3; docket no. 62 at 4.) As a preliminary matter, the Court notes that Defendants entirely misconstrue Plaintiff's claim with regard to Corizon. Throughout their responses to Plaintiff's Motions, Defendants assert that "Plaintiff's request appears aimed at challenging the medical judgment of his medical providers with medical research," and they point the Court to precedent showing that "an institution's internal rules and regulations do not add to is obligations to the public or establish a standard of care." (*See, e.g.*,

4

docket no. 60 at 4, 5.)  While Plaintiff alleged that Defendants Jackson and Jayawardena acted with deliberate indifference to his medical needs by improperly treating his knee, Plaintiff asserts that Corizon acted with deliberate indifference when it chose to deny Plaintiff's treatments "based on financial considerations."  (*See* docket no. 56 at 15.)  Thus, Plaintiff need not establish that Corizon showed poor "medical judgment" or that it violated some established standard of care.  Instead, Plaintiff must show that Corizon implemented a policy, custom, or practice that caused a deprivation of the his Eighth Amendment rights.  *See Starcher v. Corr. Med. Sys., Inc.*, 7 Fed.Appx. 459, 465 (6th Cir. 2001); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir.1993).

**A.     Request for Production Nos. 13, 14, 15, and 16**

Plaintiff's RFP Nos. 13, 14, 15, and 16, seek the following:

13.     The latest edition of the Milliman Care Guidelines Clinical Indications for the surgical repair of a torn meniscus;

14.     The latest edition of the Interqual Guidelines Clinical Indications for the surgical repair of a torn meniscus;

15.     The National Commission on Correctional Health Care Standards with respect to Plaintiff's condition, i.e., a torn meniscus and resultant severe pain; and

16.     The National Committee Quality Assurance standards with respect to Plaintiff's condition, i.e., a torn meniscus and resultant severe pain.

(Docket no. 47 at 15-17.)  Defendants responded to each of these requests by objecting that the request was overly broad and not likely to lead to relevant material; that Plaintiff's request "appears to seek miscellaneous policies and procedures and guidelines cited in the MDOC contract with Corizon;" and that the various guidelines "do not establish or require specific action by medical

providers in the circumstances of this lawsuit." (*Id.*) Defendants then argue that "such guidelines and internal policies are not relevant to proving whether the named defendants were deliberately indifferent to some serious medical issue of Plaintiff." (*Id.*)

The Court will deny Plaintiff's Motion with regard to his RFPs for two reason. First, while the Court does not agree that internal policies are irrelevant to Plaintiff's claim, the Court does agree with Defendants that the content of the policies and guidelines that Plaintiff seeks cannot show that it is any more or less probable that Corizon acted "based on financial considerations." Plaintiff has not shown or even suggested that Corizon has adopted any of these policies or guidelines as its own internal policies. Second, Rule 34 only requires a responding party to produce documents that are in its possession, custody, or control. Fed. R. Civ. P. 34(a)(1). The polices that Plaintiff seeks are developed by third parties and are merely referred to in Corizon's contract with MDOC. While Corizon may have access to these policies through online subscription services (*see* docket no. 47 at 15), Rule 34 does not require a party to provide research services.

### B.     Plaintiff's Interrogatory No. 3.

Plaintiff's interrogatory No. 3 asks Defendant to "[s]tate the risk 'risk share maximum cap' that the [MDOC] is responsible to pay Corizon . . . under the contract that was in force as of March 22, 2012 until the present." (Docket no. 62 at 11.) Defendant responded that the request was irrelevant and not likely to lead to relevant materials and that "Plaintiff appears to be seeking miscellaneous information cited in the MDOC contract with Corizon. (*Id.* at 12.) Defendant then noted that the Risk Share Maximum Cap is "the maximum amount the parties to the Contract agreed that the MDOC is to pay Corizon for services under the contract" and argued in its objection that "[t]his information is not relevant to the circumstances of this lawsuit." (*Id.*) Plaintiff asserts that

6

the risk share maximum cap is relevant because "the amount paid to Defendant by the state of Michigan[] goes directly to Defendant's financial considerations of Plaintiff's treatment." (*Id.* at 5.)

MDOC's contract with Corizon is a risk sharing contract under which MDOC pays Corizon a per-prisoner, per-month (PPPM) rate that changes at various thresholds of prison population. *See* State of Michigan Dept. Of Mgt. And Budged Contract No. 071B9200147 at section 1.061, *available at* http://www.michigan.gov/documents/buymichiganfirst/9200147_266870_7.pdf. Pursuant to the contract, MDOC is responsible for various costs until the total cost reaches a "risk share target," at which time MDOC And Corizon begin sharing costs. When the total costs reach the risk share maximum cap, Corizon must absorb any overage. *See id.* at §§ 1.061 and pp. 5, 21, 26, 98. The actual PPPM amounts decrease for every 1,000 prisoners in the MDOC system and have been revised throughout the life of the contract. *See, e.g.*, *id.* at 5. For example, As of December 1, 2012, the PPPM Risk Share Maximum Cap for a prison population of 50,000 inmates would have been $203.94, for a total cap of $10,197,000.00 per month. *Id.*

As noted, Plaintiff seeks the Risk Share Maximum Cap under the contract from March 22, 2012, through the date of his request. The Court acknowledges Plaintiff's contention that Corizon may choose to forgo expensive treatments for prisoners if the amount it receives from MDOC is less than the cost of care, but Plaintiff's request for the Risk Share Maximum Cap is not reasonably calculated to lead to evidence in support of this contention. Regardless of what the exact cap number was in 2012, any suggestion that the cost of Plaintiff's requested surgery would have pushed Corizon's costs close to or beyond the multi-million-dollar cap is wholly speculative. Knowledge of the actual maximum cap number does not make any fact of consequence any more or less

7

probable.  Moreover, Plaintiff's interrogatories themselves make it clear that he has access to the contract, and all of the relevant cap figures are set forth therein.  Thus, even assuming, *arguendo*, that the information Plaintiff requested is relevant, Plaintiff already has the information that he seeks.  Therefore, the Court will deny Plaintiff's Motion with respect to Interrogatory No. 3.

### C.       Plaintiff's Interrogatory No. 4

Plaintiff's interrogatory No. 4 asks Defendant to "[d]efine the term "medically necessary care" and state the source of your proffered definition."  (Docket no. 62 at 12.)  Defendant responded that the request is vague, confusing, and calls for a legal conclusion.  (*Id.*)  The Court agrees.  While Plaintiff's Motion asserts that he seeks the definition of "medically necessary care" as it was used in Corizon's contract with the MDOC, he did not indicate as such in his interrogatory. Moreover, to the extent that Plaintiff's intent could be implied through the context of his interrogatories, the contract at issue requires health care services to be "provided to prisoners using a standard of medically necessary care imposed by court decisions, legislation, accepted correctional and health care standards and MDOC policies and procedures."  Contract No. 071B9200147 § 1.012(B).  Thus, the contract itself directs Corizon, the MDOC, and the Court to other sources for the definition of "medically necessary care."  The Court will not order Defendant to provide an answer that calls for a judicial determination of a contractual term.

### D.       Plaintiff's Interrogatory No. 5

Plaintiff's Interrogatory No. 5 asks Defendant to

[s]tate whether any state has withdrawn from, or refused to renew, its contract with Corizon Health, Inc. to provide health care for its prisoners, whether under the former name or current name of your corporation, based on the state's allegation that Corizon Health, Inc. failed to provide adequate care to its prisoners;

a. If your response is in the affirmative, please identify the respective states and the

8

dates involved.

(Docket no. 62 at 12-13.  Defendant objected, arguing that Plaintiff's interrogatory was irrelevant because "[w]hether another state chose to withdraw or not to renew its contract with Corizon has no relevance to the medical care Plaintiff received in this case."  (*Id.*)  Plaintiff asserts in his Motion that his question is reasonably calculated to show that Corizon has a custom or policy of acting with deliberate indifference to prisoner medical needs at a nationwide level.  (*See id.* at 6.)  Defendant stand by its initial objection.  (Docket no. 60 at 7-8.)

        The Court agrees with Plaintiff.  To the limited extent that any state has cancelled a contract with Corizon specifically based on allegations that Corizon failed to provide adequate care to prisoners, this information is reasonably calculated to lead to admissible evidence regarding a custom, policy, or practice of Corizon that resulted in inadequate care and the ultimate cancellation of the contract.  The Court will, therefore, order Corizon to answer Plaintiff's Interrogatory No. 5 and provide Plaintiff, within 21 days, with a list of states that have cancelled or refused to renew a contract for health care services based on allegations that Corizon provided inadequate care to prisoners, including the date on which the contract was entered and the date on which the contract was cancelled.  If no such states exist, Corizon should so indicate.

        **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel [47] is **DENIED**.

        **IT IS FURTHER ORDERED** that Plaintiff's Motions to Compel [59 and 62] are **GRANTED IN PART AND DENIED IN PART** as follows:

        a.        Plaintiff's Motions with respect to Interrogatory Nos. 3 and 4 are DENIED.

        b.        Plaintiff's Motion with respect to Interrogatory No. 5 is GRANTED.  Defendant

                Corizon is ordered to answer Plaintiff's Interrogatory No. 5 and provide Plaintiff,

within 21 days, with a list of states that have cancelled or refused to renew a contract for health care services based on allegations that Corizon provided inadequate care to prisoners, including the date on which the contract was entered and the date on which the contract was cancelled.  If no such states exist, Corizon should so indicate.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


Dated:  May 5, 2014                         s/ Mona K. Majzoub
                                            MONA K. MAJZOUB
                                            UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Andra Young and  Counsel of Record on this date.

Dated: May 5, 2014                          s/ Lisa C. Bartlett
                                            Case Manager